In court, we'll next call case number 120110. People ex rel. Anita Alvarez v. the Honorable Vincent Gaughan, Judge of the Circuit Court of Cook County, et al. Are you ready to proceed? Ready? Good morning. Madam Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court. I am Assistant State's Attorney Alan Spalberg, and I represent the petitioner in this matter, Cook County State's Attorney Anita Alvarez. We come before you today seeking a writ of mandamus against the Respondent, the Honorable Vincent Gaughan, because he failed to impose the statutorily mandated firearm enhancements and both counts of aggravated criminal sexual assault with a firearm that Defendant Stephen Castleberry was found guilty of. The facts of this case are undisputed. Mr. Castleberry raped the victim, C.A., repeatedly, both orally and vaginally, while holding a gun to her head. The State's Attorney charged Mr. Castleberry with numerous counts of aggravated criminal sexual assault with a firearm. The jury trial was held, and he was found guilty of two separate counts, one based upon the oral rape and the second based upon the vaginal rape. However, at sentencing, Judge Gaughan ruled that he was only obligated under the law to impose one firearm enhancement. And so, as a result, he imposed sentences of 24 years for one count of aggravated criminal sexual assault with a firearm, and nine years on the other, even though, under the applicable statutes, a minimum sentence of 21 years for each count was required. Defendant appealed, and in the middle of the appeal, the prosecution pointed out that the sentence was illegal under the then-applicable Boyd Judgment Rule. The appellate court agreed, and ordered that the sentences be corrected to comply with the mandatory minimums required by the legislature. Defendants sought further lead to appeal to this court, and this court then ruled for the first time that the Boyd Judgment Rule was inconsistent with Illinois law, and that illegal sentences could not be corrected through the appellate process. As a result, it instead could not be corrected through the appellate process, and instead could only be corrected by way of mandamus in this court, pursuant to its original jurisdiction. As a result, four days later, the Cook County State Attorney sought leave to file a petition for writ of mandamus, which ultimately this court granted. And so today, we are coming before you asking that this court issue such a mandamus. And it is clear that mandamus is appropriate in this case, because first of all, there is absolutely no dispute that Judge Bond had no authority and no discretion to refuse to impose the 15-year firearm enhancement on both counts. Moreover, it is clear that the trial judges are alleged to comply with the statutory provisions. And then finally, as recognized by this court in the Castleberry decision itself, it is that that error is not remediable through the appellate process in any way. The only mechanism by which we stand before you today, the writ of mandamus. So as this is an appropriate candidate for mandamus relief, as it is clear that there is an obligation of Judge Bond to comply, an obligation for him to have done so in the first place, we ask this court to issue such a writ. Defendant Mr. Castleberry raises three claims as to why we should not be entitled to such a mandamus. Importantly, however, he does not contest any of the points that I have just made. Instead, he claims, first, that mandamus is not available because other provisions of the Code of Corrections would preclude Judge Bond from imposing the statutorily mandated sentence, which of minimum 21 years, whereas the initial sentence was only nine years. That's clearly wrong. As this court has repeatedly held, the Code of Corrections and the provisions of the Code of Corrections that the defendant is relying upon were intended to address questions of judicial vindictiveness, and that there is no issue of judicial vindictiveness where it is the prosecution that is pointing out the judge has failed to comply with the statutory minimum that he should have done so in the first place. Moreover, under Mr. Castleberry's theory, no court, not even this court, could ever correct in a legally low sentence, meaning that judges would be free to act with impunity as to where they thought the sentence would be appropriate, irrespective of what the legislature has decided. That is something this court has repeatedly held, most recently in the Clark decision, that judges are obligated to follow the legislative mandates, even if they disagree with them, unless they find that the court has failed to comply. So clearly, for policy reasons, for the underlying purpose, and for the plain language of those provisions, there's nothing in the Code of Corrections which would prevent or preclude a rare mandamus in this case. Moreover, Mr. Castleberry's claim that the elected and official state's attorney of Cook County has no standing to even come before you to seek a mandamus is also wrong. It is wrong with the long history of how this court has identified who may be the relator in a mandamus action. But even more importantly, it is wrong in light of the constitutional structure that we have here in Illinois. That the framers of our Constitution, both in the 1970 Constitution and before, have recognized that the state's attorneys themselves are independent constitutional officers who share much of the same authority as the Attorney General, both constitutional and common law authority, and can apply to any case. And who appear to represent the people in the courts of the state. Most importantly, this court has specifically recognized in the Nagano case, which we cite in our reply brief, that the authority of the state's attorney cannot be transferred or removed to another entity. And in the city of Paris case, which is the only case that this court has ever addressed what is now Section 4 of the Attorney General Act, in that case, in the city of Paris case, this court specifically held that it was not appropriate for the state's attorney to be transferred or removed to another entity. That the state's attorney may bring an appeal directly to this court, even where the Attorney General is uninvolved. There was a case involving a co-oronto action where the state's attorney had brought it in the trial court, brought the appeal to this court. The defendants in the co-oronto action challenged the state's attorney authority, and this court specifically rejected that. Expressly saying, under the statute, it had no bearing. Ultimately, the state's attorney lost the appeal, but in purposes of the authority of the state's attorney to come before this court and present the case and present the appeal, that case is the seminal case on this issue. It has never been addressed. It has never been vacated. It has never been abrogated in any way. Can we go back to the statute itself that we're discussing here, and the meaning of the statute that indicates that the Attorney General is the, I'm trying to come up with the exact language, but the Attorney General is the person who holds the authority of the state's attorney. The Attorney General shall be the legal officer of the state, shall have the duties prescribed by law, and then the Attorney General Act, first, to appear and represent the people of the state before the Supreme Court in all cases in which the state or the people of the state are interested. How do we work through the statute that appears to make the Attorney General the legal officer who is to bring claims before this court specifically? Well, Your Honor, I think that the statute has to be read in conjunction both with the Constitution, the case law of this state, in particular the Fergus v. Russell case, and the people like Phil Scott v. Bryson who fouled Fergus, as well as the Constitutional debates of the 1970 Constitution, and the city of Paris case, as it is the only case to have construed that provision. And what all those cases show is that certainly the Attorney General is the officer for the state, is the chief legal officer for the state. But there is a distinction between being a legal officer for the state and the representative of the people of the state of Illinois. Much like the state's attorney is the chief legal officer for the county, the state's attorney is also the legal representative for the people of the state of Illinois. The people and the state are distinct entities in that regard. And the state's attorneys have always been the legally authorized representatives of the people, independent of the Attorney General's authority to represent the state by state. And so, as Fergus v. Russell explained, and was followed very clearly by the Scott v. Bryson case, the Attorney General's authority is exclusive, absent, and independent. The other constitutional directive is found in Article VI, Section 19 of our Constitution, which creates the offices of the various state's attorneys. Because they are independent constitutional officers. And it was that authority, that constitutional basis, that led to this Court's decision in Nagano, recognizing the constitutional authority of the state's attorney. This Court's decision in Rifkin, also reaffirming that authority. And just numerous other cases. Importantly, in the Scott v. Bryson case, this Court looked at the Attorney General's authority, not in relation to state's attorneys, but in relation to other state actors. And specifically held that nothing in the constitutional debates leading to the 1970 Constitution indicated any intent to change the authority of the Attorney General. And that's important, because prior to the 1970 Constitution, the state's attorneys were already recognized by this Court as effectively co-equals with the Attorney General in the representation of the people of the state of Illinois. Now, I recognize that Section 4 of the Attorney General Act specifically says that the Attorney General is to appear before this Court on behalf of the people. Within the state's attorney provision, it specifically says that the state's attorney is to prepare the brief and provide it to the Attorney General. I would suggest that the reason for that, as it existed in nearly verbatim form since 1872, was that at the time, it was understood that the various state's attorneys would write the briefs and send them to the Attorney General to appear before this Court. So that way, the various state's attorneys didn't have to travel across the state to appear. But even with that, history has shown, this Court can look at its own records, that state's attorneys have repeatedly appeared throughout history of this state. Appearing on behalf of the people of the state of Illinois, whether from Cook County or from other counties. But rarely has the issue been presented in any of those cases, that the state's attorney's standing was not challenged in those cases. Yes, Your Honor. The only case that I know of where it was actually challenged and decided would be the City of Paris case, where it was specifically held otherwise, that there was no problem with the standing. And I would note that because it was a 1942 case, I believe it clearly predated the 1970 Constitution. And the framers of the Constitution were necessarily aware of it, and chose not to make any changes to the relationship between the state's attorney and the Attorney General. In fact, the debate which this Court addressed and discussed in the Bryslin case, which can be found in the Constitutional Convention, specifically shows that the framers of the Constitution categorically rejected any notion that the Attorney General has any supervisory authority over the state's attorneys. That they were independent constitutional officers, and the Constitution would not authorize that. And so, the authority of the state's attorney is independent and constitutionally based. Your brief, for the reply brief, seems to discuss kind of in a different way, and talks about the interest of the state's attorney. Yes, Your Honor. A very different argument than what you're making here today. I don't think it's necessarily true, because I do make both these arguments, and I talk very much about the state's attorney's independent authority. But, yes, in the City of Pike case, County of Pike, going back all the way to 1849, was the first time this Court ever addressed the question, who could be a relator on a mandamus? And what this Court said was that to be a relator, it could be anyone, any citizen, if it's a public interest that's being enforced, or a private citizen, only if it's a private right. It's a particular one interest. Clearly, the state's attorney of Cook County is much like every other public citizen, and can serve as a relator. So what private interest does the state's attorney of Cook County have in this issue? If it's not considered a public interest, a private interest, as we point out in the reply brief, I would believe that that is directly related to the fact that it was the state's attorney's exclusive discretion and authority to decide to charge Mr. Castleberry with counts involving the firearm enhancement, to go to trial on that point, to seek that, and at that point, where it's her authority and her discretion which is being impinged, as well as the public interest in having the laws properly executed. But her authority and her interest is what the private right. She would be the best person, the best relator, if this was limited solely to questions of who could be the relator. For that reason, we believe that this is clearly within the authority of the state's attorney to bring mandamus. As we point out, state's attorneys have brought mandamus actions to this court going back to before the 1870 constitution, repeatedly, always, and have always served as the relator in many, many ways. And I would point out the policy reasons as well as to why it's important, why the attorney general should not have, essentially, a veto power, which is what Mr. Castleberry is essentially asserting here. Because if the state's attorney and the attorney general disagrees that the law is the basis for seeking a mandamus, the attorney general would actually, effectively, be able to preclude even seeking such a right, such relief. And a perfect example of that is presented before this court tomorrow in the mandamus action against Judge Howard, where the state's attorney and attorney general have taken diametrically opposed positions on the law. And if, in this case, if the attorney general, or in any case, had said that the state's attorney could not seek mandamus, that legal issue could not be resolved by means of mandamus. Do you have any other cases where the state has been on the opposite side of the attorney general? I believe there are some cases in the list of cases where the state's attorney and the attorney general are opposite of those mandamus. I didn't highlight them in my brief and my recollections that there are some. There are some other cases where I know for a fact that the attorney general has actually intervened in a manner brought by the state's attorney before this court in the name of the people. By history, by custom and practice, there has always been the recognition of the state's attorney's authority. And then, finally, defendant's last claim regarding laches. I would just simply point out that clearly the state's attorneys acted diligently in this matter, bringing the mandamus petition only four days after this court's decision in the Casselberry case, where it held for the first time that the matter could not be addressed in the ordinary appellate process. Also, more importantly, Mr. Casselberry does not even allege that he was prejudiced in any way by this. He was sentenced illegally by Judge Bond to an illegally low sentence. He remains, pursuant to this court's ruling before, subject to that illegally low sentence and will continue to do so unless and until this court issues a writ of mandamus. So there is no aspect of prejudice which he can point to at all. And for those reasons and those stated in our brief, we would respectfully ask this court to issue a writ of mandamus directing Judge Bond to vacate the sentences that he imposed previously and to resentence the defendant, Stephen Casselberry, in full compliance with the applicable sentencing provisions. Thank you. Thank you, Counsel. Good morning. May it please the Court. Counsel. My name is Ginger Odom. I'm from the Office of the State Appellate Defender. I represent the defendant and respondent, Stephen Casselberry. Judge Bond is the nominal respondent, but Stephen Casselberry is the defendant and the person with the real interest in this case. This court in Casselberry employed permissive language when it suggested that the remedy of mandamus therefore permits the state to challenge criminal sentencing orders. Notably, this court did not direct the Office of the Cook County State's Attorney to file a petition for mandamus, nor did this court guarantee that such a petition would be successful if it were filed. Instead, this court suggested that such a course of action may be appropriate. Now that petitioner has taken this path, this court must decide whether mandamus will lie. And the answer to that question is no. Mandamus will not lie in this case for three reasons. First, the petitioner does not have standing to bring this action in this court. Second, an apparent conflict in the statute defeats the clear right to relief. And third, where the state waited six and a half years after the known error before seeking mandamus, the equitable doctrine of laches bars the petition. Turning to standing, only the Attorney General may appear in this court on behalf of the people of the state of Illinois. The State's Attorney's Office is not authorized to sue on behalf of the people of the state of Illinois. The Illinois Constitution, the Illinois Attorney General's Act, and decisions from this court dating from 1915 in Fergus established that only the Attorney General is the only officer authorized to bring a petition for writ of prohibition or mandamus in this court. Now this, my opponent has said that, has talked about the city of Paris. So quickly I will explain that the city of Paris did not involve a petition for writ of mandamus. Rather, the city of Paris involved a quo warranto action. In this court, this court in addressing, citing the quo warranto act, this court held that the Attorney General and the State's Attorney have equal power to institute proceedings under this act, referring to the quo warranto act in cases in which the state or the people of the state are interested. Now the rationale there was the State's Attorney's Office was authorized to file a quo warranto action in the trial court, and therefore it rationally followed that the State's Attorney could pursue an appeal if the quo warranto action, could pursue an appeal in this court if the quo warranto action failed. The petitioner's reading of Paris applies the quo warranto act, and that's an expansion of the holding to apply to petitions for writ of mandamus. However, the petitioner has not cited any statute that allows for the petitioner to file a writ of mandamus in this court, like the quo warranto action allowed for the State's Attorney to file such an action there. Isn't every criminal case, though, in the state that's brought by the State's Attorney brought in the name of the people of the state of Illinois? Yes, that's correct. And that is, can you say your question again, please? I said, isn't every criminal case brought by the State's Attorney's Office titled people of the state of Illinois versus whoever? Every case that's brought in this court? No, in the circuit courts. Oh, certainly, yes, Your Honor. And in fact, that's because the Illinois, the State's Attorney's Act, the powers, the State's Attorney's Act, give the State's Attorney the primary duty to commence and prosecute all actions in the circuit court for his or her county. So that is why the people of the, that's why the State's Attorney's Office appears for the people of the state of Illinois. They are representing specifically the interests of those counties. The State's Attorney argues about the veto power that the Attorney General has. The Attorney General already has veto power over the State's Attorney's Office because the Attorney General, in terms of bringing criminal appeals to this court, as the petitioner noted, the State's Attorney's Act requires for the State's Attorney to assist the Attorney General whenever it may be necessary. And in cases of appeal from his county to the Illinois Supreme Court, the State's Attorney's Office must supply briefs to the AG's office prior to them being filed. So as such, the Attorney General's Office already has veto power over the State's Attorney's Office in terms of criminal appeals. So is it your position that it's as easy as indicating that standing wasn't specifically raised in other cases to overlook the fact that I believe opposing counsel in his reply brief, I believe he has a string citation with 42 cases in which we have allowed the State's Attorney to proceed, you know, between 1872 and 2012, I think? Yes, Your Honor. As you pointed out, there's no indication that in any of those cases that standing was ever challenged by the respondent in those cases. Standing is an affirmative defense that must be raised or be waived. So where the respondents waived their challenge to the standing, that doesn't stand for the rule that the State's Attorney's Office has standing. And there is a single case that I'm aware of in which the State's Attorney's Office standing to proceed in a petition for writ amending was challenged. And that's in the People x Rel, the Donald Snyder case. That's 95568. It's a blanket clemency case. We included a briefing from that case as an appendix to our responsive brief. In that case, Governor Ryan had issued blanket clemencies, and in response to that, the State's Attorney's Office challenged that clemency through a petition for writ of prohibition or mandamus in this court because Donald Snyder was a criminal death row prisoner who had come from Cook County. And at that time, there was an objection that Mr. Snyder, he filed an objection to the standing of the State's Attorney's Office in that case to bring a petition for writ of mandamus. And this court denied the State's Attorney leave to file a petition for writ of mandamus, and the Attorney General was allowed to proceed in a petition for writ of mandamus in that case. So that's the only case that I'm aware of in which standing was raised. And when standing was raised, the State's Attorney's Office was not allowed to proceed. Public policy-wise, what do you think a ruling from this court denying standing to the State's Attorney's Office, what impact do you think it would have on the two offices, the Attorney General's Office and the various State's Attorney's Offices? I'm not certain it would have any impact on the State's Attorney's Office other than this court would not be entertaining individual briefs from 102 State's Attorneys any longer. Now all of those petitions would either come from the Attorney General's Office or there would be a more uniform body of law in that the Attorney General would be able to sign off. I mean, that's what happens in appeals, in criminal appeals in this court. The Attorney General, particularly for Cook County, does not always respond as of counsel for the Attorney General's Office. So I'm not certain it would have any real impact moving forward. The Attorney General has been served in this case and is certainly on notice about this case. Mr. Castleberry was required to serve the Attorney General with his responsive brief even though the Attorney General is not a party to this petition. So the State's Attorney's Office also served the AG with all of its briefs and the AG has remained in complete silence on this issue. It has not weighed in one way or another. Here the Cook County State's Attorney represented the people in the circuit court and at the sentencing and possibly on appeal to Castleberry, I don't recall. And unless we find, it seems to me, unless we find that the statute, or the section of the Constitution dealing with the Attorney General being the person to appear in this court, we would have to find that that means exclusively. And do you believe it says that? This court has determined that. In the Fergus case, this court reiterated that holding in People Extra Hoying v. Newcomer in 1918. In that case, the State's Attorney filed in this court a petition for writ of mandamus to force the trial court to enter a finding of nollie cross on a charge which the State's Attorney had admittedly done no investigation on that case. And the trial court refused to enter a nollie cross on that case and the State's Attorney filed, the State's Attorney's office of Cook County filed a petition for writ of mandamus to force the trial court to enter the nollie cross order making exactly the same argument that the State's Attorney office is making here. The argument being as State's Attorney he possesses all the powers possessed by the Attorney General. And this court denied mandamus and held this court does not regard the powers of the State's Attorney as co-extensive with those of the Attorney General who is a chief law officer of the state and head of the legal department. So we're not asking a departure from prior holdings in this court. We're asking for consistency with those prior holdings. This court has never found that the State's Attorney's office has standing to file a petition for writ of mandamus or prohibition in this court. So turning to the apparent statutory conflict, here Judge Don cannot act in compliance with the sentencing statute without violating another statute 5 slash 5 dash 4.5 dash 5.0 which prohibits the trial court from increasing a sentence once it is imposed. Far from presenting a clear right to relief, the facts before this court are complex, difficult, and unresolved. Mandamus is an extraordinary remedy that will only lie when there is a clear right to relief. And this apparent conflict in the statute means that the right to relief is not clear but is clouded. There may well be a right to relief because the trial court did not impose a mandated sentence, but at this point that right to relief is not clear. It is clouded by the prohibition for the trial court to increase Mr. Castleberry's sentence. Isn't the introductory part of that section where a conviction or sentence has been set aside on direct review or on collateral attack? Yes, Your Honor. Does that have any effect on your argument? It may. I mean, that's the question. That's the question. It poses a question of whether that statute is only applicable in those instances or if it is a complete prohibition from the trial court from increasing the sentence. And that question, the very question that you ask, means that Mandamus does not lie because it's not a clear right to relief. You have to answer that question, and therefore the question is clouded, is not clear. Ms. Odom, back to the point that you were making with respect to increasing the sentence. Occasionally we've had rogue judges that have not wanted to impose a sentence, not even mistakes, just indicating on the record, I'm not going to impose that sentence. And wouldn't that empower them to do that in this instance? And there would be no recourse for that? Well, prior to this court's decision in Castleberry, the recourse would be the void judgment doctrine because at that point, up until November of last year, any judgment that doesn't comport with the statutory mandate would be called void. Moving forward, because there is Mandamus would not lie. There may be a right to relief, but the answer is not Mandamus. Instead, the answer was suggested by this court in Castleberry, where this court suggested that there may be an avenue besides Mandamus to correct an illegal sentence. And in paragraph 28 and 29, this court said that the way out from this situation may be an amendment to the Supreme Court rules. That is, an amendment to Supreme Court Rule 604A could be added, there could be a provision added, that the state may be allowed to appeal when the sentence does not conform to statute. So when we have a rogue judge... As we sit, there's no recourse outside of Mandamus. It's not Mandamus. Well, and Mandamus doesn't lie because of this conflict. But yes, Your Honor, other than an amendment, which was suggested by this court, that would be the recourse that would be allowed. But in the absence of such an amendment, and where the right to relief is not clear, Mandamus does not lie. Now, turning to laches, finally, where the state waited six and a half years before seeking Mandamus, this action is barred by the equitable doctrine of laches. Generally, a period of six months is considered reasonable. A right to relief must be pursued within a reasonable amount of time. That's what the law teaches us. And this court and other courts have determined that six months is generally considered a reasonable amount of time. However, the state's attorney here did not seek Mandamus within six months of the known sentencing error. Mr. Castleberry was sentenced in June of 2011, and the state's attorney did not immediately file a petition for rid of Mandamus, even though they objected to Mr. Castleberry's sentence. Instead, and they didn't file a petition to seek Mandamus at any time. Instead, they tried to increase Mr. Castleberry's sentence in a direct appeal. After Mr. Castleberry challenged a jury instruction, I believe, in his direct appeal, and he challenged the first add-on that he got, which was unconstitutional under the House trial, only then did the state's attorney respond in their responsive brief and ask the appellate court to increase Mr. Castleberry's sentence, even though that action was unconstitutional. The state can only appeal in certain enumerated instances, and seeking a sentence increase is not one of those instances. And Supreme Court Rule 615B4 does not allow the appellate court to address the state request to increase the sentence. Nonetheless, the state pursued an increase in Mr. Castleberry's sentence through the direct appeal process rather than filing a petition. For laches to apply, wouldn't Mr. Castleberry have to be personally prejudiced? Yes, Your Honor. I mean, Mr. Castleberry certainly would be personally prejudiced when he is a quarter of the way through his sentence at this point and now learns that an additional 15 years will be added on. Mr. Castleberry was 38 years old at the time of his sentence, and the original sentence that he got meant that he would he could expect to be released at the age of 71, so it's possible that he would be able to leave prison. However, with an additional 15 years added on to that sentence, Mr. Castleberry has no hope of relief until the age of 86. Does the prejudice relate to the actual outcome or to the delay when we're dealing with laches? I see what you're saying. Well, even if it's not that kind of delay, there's certainly a public prejudice to the public. It's inherently prejudicial to the public to allow the state to sit on a known right and not exercise that right until six years. So one can certainly consider a hypothetical situation where a defendant would be as he's walking out the doors of the Illinois Department of Corrections, then the state decides to file an emergency petition for writ of mandamus, and then that person who otherwise would be relieved and would be banking on leaving for all of those six years would not be allowed to leave. Prior to Castleberry, the state could have proceeded through an appellate process, right? The appellate process? Well, at the time that the state, and that's their argument. However, at the time that the state was pursuing relief, they were relying on ARNA, right? They were relying on the Boyd Judgment Doctrine. However, the fragility of the Boyd Judgment Doctrine, the writing was on the wall as far as ARNA was concerned by the time the state filed its brief in 2013, arguing that ARNA meant that Mr. Castleberry's sentence was Boyd. That is, Belleville, this court's decision in Belleville came out in 2002, and as early as 2009, the state was filing in this court petitions for leave to appeal asking for the abolition of the Boyd Judgment Doctrine in ARNA. So they were arguing out of both sides of their mouth. They were arguing that ARNA should go away in this court at the same time as they were relying on ARNA to ask for a sentencing increase for Mr. Castleberry. So that's the point about they were pursuing an avenue that was known to be close to them by asking for an increase in sentence, and they were pursuing it knowing that the writing on the wall, that ARNA was about to go away, or that it wasn't really good law anymore. And that's why we're arguing that by not pursuing a known remedy, at the time they were saying that petition for mandamus was always a viable remedy, notwithstanding our standing argument, they still never even tried. It wasn't the standing argument that was keeping them from pursuing petition for writ of mandamus in 2011 when Mr. Castleberry was sentenced. Other than your arguments that on standing latches and increasing the sentence improperly, you are not apparently contesting that the 15-year add-on should have been. No, the statute seems to call for a 15-year add-on. That's correct. If there are no further questions, for these reasons and those put forward in our brief, we ask that this court deny the State's Attorney's Office petition for writ of mandamus. Thank you. Thank you, Counsel. Thank you. Just a very brief rebuttal. First, in regards to the State's Attorney's standing to appear, and particularly the reference to the Snyder case, as this court is well aware, after former Governor George Ryan commuted all of the sentences of the defendant serving death sentences, various mandamus actions were brought by both the Attorney General of the State and the Attorney of Kane County, various actions were brought. As demonstrated in the appendix to Mr. Castleberry's brief, on a single date, this court denied nearly everything but granted the motion for leave to file a petition for writ of mandamus filed by the Attorney General. The timing is very significant because what the Attorney General's motion addressed and what this court's decision addressed, ultimately, once the opinion came out, addressed the cases involving every death row defendant who was covered by the mandamus action, not those from a particular county. Clearly, the motion for leave to file a writ of mandamus that was filed by the Cook County State's Attorney's Office only addressed those defendants who were either unsentenced to death at the time of George Ryan's action or had not signed their commutation petitions, only those out of Cook County. No authority was claimed to raise the claim based upon those out of DuPage or Kane or anywhere else. And that's why the different state's attorneys had filed things. And it would seem to me, and what was understood at the time by the state's attorneys, was that this court elected to address all of the claims in a single case, addressing everyone. And since the Attorney General had brought such a case, it made sense to do that rather than address it independently. Clearly, there was no, while there was a challenge to the state's attorney's standing to bring that at the time and there was a response filed, no ruling was made in response to it at all. And so no authority, no precedent can be drawn from that. Likewise, counsel referred to the Newcomer case. And Newcomer is a very distinct case because, one, this court did not say the state's attorney did not have authority or standing to bring a mandamus petition before this court. What this court held was because the state's attorney didn't have the ultimate charging authority because at the time charges were filed by the police, the state's attorney also didn't have the authority to nally cross a case. That that was something that was within the Obviously, this court has long since recognized that state's attorneys, each individual state's attorney, has the constitutional adherence authority to decide what charges to bring and what charges to follow and pursue and even dismiss recognizing state's attorneys have the authority to nally cross the case. And so Newcomer, I think, is an aberration in the history of the cases, particularly in light of Nagano, which came out afterwards, and does cite Newcomer and specifically recognizes the state's attorneys as independent constitutional authority and constitutional officers of the states. If the AG filed a brief to regular criminal appeal in this court and the state's attorney did not agree with the position taken by the AG, could the state's attorney file its independent brief here? I believe by authority, yes, we probably could. However, thankfully, so far as I know, it has never come to that. Where's the authority? Where does that come from? Our understanding is that the state's choice scheme at this point is that when the county's state's attorney files a brief, that it's filed as of counsel in the name of the attorney general, correct? And that brief is reviewed first by the attorney general before it's filed? And that's by statute? By statute or by custom and practice. I'm not sure. I know for a fact that for a very long time, up until more recent times, the Cook County State's Attorney's Office would file briefs with the approval of the attorney general without really much review at all by the attorney general. For the past few years, that has changed and we've been working much more in conjunction with them to work together. But is this by the attorney general's statute that this occurs? I would say it probably is by the attorney general's statute, but more importantly, by custom and practice. I'm asking about the statute. Then you believe, despite the statute, that if the state's attorney disagrees with the position of the attorney general, on a regular appeal, that the state's attorney could file its own brief here in this court? Yes, I do believe that. I believe that that authority is drawn from the Constitution itself and the ability to represent the people of the state of Illinois. Mr. Spelberg, can you address Ms. Odom's take on the Paris case? Yes, so the Paris case, as I stated, was a Colorado action, which at the time, as this court knows, was before the 1970 Constitution. The ability to bring individual types of actions was defined by the legislature, much like in Castleberry, in the Castleberry decision where this court recognized that the court's jurisdiction is no longer defined by statutory enactments. It was a relic of the pre-1970, pre-1964 constitutional amendment. At the time, in 1942, the ability to bring a Colorado action was limited by statute. It could only be authorized by the legislature and stated it could be filed by either the state's attorney or the attorney general. After the state's attorney of, I believe it was Edgar County, filed such a Colorado action and lost, he filed the appeal directly to this court, which I think at the time would be the proper place because there was no intermediate appellate court for that type of action. And the defendant in that case sought to dismiss the appeal, much like Mr. Castleberry, because the state's attorney did not have the authority under Section 4 of the Attorney General Act to bring such an appeal. And what this court held specifically and directly was the defendant's challenge raised an inquiry into the ability to bring this case, and they rejected it, this court rejected it, because since the state's attorney had the authority to bring the case in the circuit court, it clearly had the authority to bring the appeal to this court. And it was for that reason that I believe it is directly pertinent to these questions, because as Chief Justice Garman pointed out, every single criminal case is brought in the name of the people of the state of Illinois by the state's attorney, except for those few where the attorney general chooses to bring them directly themselves. And that's an example where the two offices have to coordinate and consolidate their work together. But that was the authority for bringing the appeal, that that authority was well in place long before the 1970 Constitution was adopted, and it effectively became what I would say would be a recognition of the constitutional authority, leading to the authority of the various state's attorneys and the custom and practice that would appear before this court. And so for that reason, I do believe that state's attorneys could act independently. We have no desire to act independently in the ordinary appellate cases, but this is not an ordinary appellate case, and that was for the reason the brief also explained the necessity of being a relator. And I just want to come back to that, because mandamus cases are different. It is a declaration by the sitting state's attorney that a particular judge by name has made a mistake. It is an important decision to be made by the state's attorney as to how he or she is going to interact with that judge in this case and in future cases. And so it is very important that the state's attorneys be able to make those decisions on their own as to how they can go forward with it. Why? I mean, you're making a public policy argument there. Why is it important for the local prosecutor to make the decision whether to have a statewide rule? I'm not rejecting a statewide rule. What I'm saying is that the local state's attorney who has to work with that judge on a daily basis on every case has an obligation to accept both the good and the bad associated with filing a mandamus. And by seeking a mandamus, it is a public declaration that the judge has made a mistake. He or she has made ramifications to the state's attorney, oftentimes he or she has made ramifications to the judge. And so allowing the state's attorney to make his or her own decision is an important aspect of that. In regards to the relevant statutes regarding the Code of Corrections, Mr. Casselberry's response, again, as we stated, the plain language of the statutes would seem to not apply in this situation at all. And again, the policy, which Mr. Casselberry is housing, is inconsistent with those statutes. Also, while counsel says that it's not a clear rule of law, that's what a mandamus actually requires for this court to only consider questions of law to resolve those questions, whether or not there is a clear rule of law. So the fact that counsel can point to potential statutes that may or may not apply is not a reason to preclude mandamus, it's a reason for this court to decide if mandamus is available. And then finally, in terms of the laches, clearly what this court has repeatedly held is that prejudice must be personal to the defendant in terms of the ability to defend against the petition itself, the action itself. That's how laches applies, not just in mandamus actions, but across the board in all cases. And it must be reasonable under the particular circumstances. Thank you.